```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK


------------------------------X
                              :
JOSE P. CHICAS,               :
                              :    19-CV-2853 (PKC)(VMS)
           Plaintiff,         :
                              :    June 25, 2020
                              :
        V.                    :    Brooklyn, New York
                              :
GARDEN DESIGN BY PLANT WORKS, :
INC., et al.,                 :
           Defendant.         :
------------------------------X


   TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
         BEFORE THE HONORABLE VERA M. SCANLON
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            SAUL ZABEL, ESQ.




For the Defendant:            JARRETT BEHAR, ESQ.



Audio Operator:



Court Transcriber:            ARIA SERVICES, INC.
                              c/o Elizabeth Barron
                              102 Sparrow Ridge Road
                              Carmel, NY 10512
                              (845) 260-1377




Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1            THE COURT:  This is Judge Scanlon.  We're on
2   the line for a telephone conference in Chicas v. Garden
3   Design by Plant Works, Inc., 19-CV-2853.  It's June 25th
4   at about 11:30.
5            Let's start with counsels' appearances.  For
6   the plaintiff?
7            MR. ZABEL:  Good morning, Judge.  Saul Zabel
8   with the law firm of Zabel & Collotta.
9            THE COURT:  And for defendants?
10           MR. BEHAR:  Good morning, your Honor.  For
11  both defendants, Jarrett Behar, Certilman Balin Adler &
12  Hyman.
13           THE COURT:  So you just know about some of
14  other folks who are on the line.  I think I have my
15  four summer interns.  So for them and for me, if you
16  don't mind, refresh my recollection and also let them
17  know where we are.  It's a case that started well over
18  a year ago.  Let's hear, plaintiff, your brief
19  description of the case, and defendant, your brief
20  description, and we'll see where we're going to go with
21  these discovery issues.  So for plaintiff.
22           MR. ZABEL:  Sure.  This is Saul Zabel
23  speaking.  This is your typical FLSA case where I have
24  a Hispanic minority landscaping employee who wasn't
25  paid overtime properly.  To some extent, it's been

1  acknowledged by the defendants through their use of a
2  Rule 68 offer.  We've gone through discovery, we've
3  gone through our paper discovery.  They've deposed the
4  plaintiff, whose testimony was completely consistent,
5  although we have yet to get a copy of his transcript
6  back from the defendant for him to review and sign, but
7  I'm assuming that that's just a matter of paperwork on
8  his part, on defendant's part.
9          The issue before you, Judge, is we want to
10 conduct a deposition in person.  We've got about 1,500
11 documents.  It's a document-intensive case because the
12 defendant is claiming that they don't meet the commerce
13 test, although on their income tax returns, there's
14 about $390,000 but a tremendous component of their
15 business and their pay practices were done in cash.  So
16 it's a document-intensive case and we need to depose
17 the defendant.  We need to depose him in person and
18 that's really the issue that's currently before you.
19         A deposition in person is far more
20 preferable than one done remotely, over the phone or
21 through telephonic means.  We've been doing a fair
22 amount of them lately.  We run into problems in
23 document-intensive cases and we've also run into
24 problems where the deponent is in the same office as
25 the attorney, which Mr. Behar has made clear in his

1  letters that that's where he intended or how he
2  intended to conduct this deposition.  We've had issues
3  where we've had defense attorneys assisting in the
4  answering of questions and there's no way to control
5  that.  And in many instances, it's hard to even realize
6  that it's happening without seeing what's going on and
7  picking up on some of the verbal cues.
8           In addition, I suffer from a hearing loss
9  and I rely on my other senses when conducting a
10 deposition, most notably the sense of timing, which
11 sometimes gets adjusted when doing a Zoom deposition,
12 and my sense of sight, which is also altered when doing
13 a Zoom deposition.  So to have this deposition done
14 remotely acts as an impediment to a full and complete
15 deposition on my client's behalf, especially when I
16 represent a working man who is required to foot the
17 bill for this deposition.  Remote depositions are more
18 expensive.
19          And if Mr. Behar is willing to have his
20 client come to his office and meet with his client in
21 his office, as he's represented in his papers to the
22 Court, then why wouldn't he just come to my office?  We
23 have a large-enough conference room where we can keep
24 social-distance boundaries and take all appropriate
25 precautions.  He can have his mask on.  He can take

whatever other precautions are necessary.  We have not had a Covid case in my office.  My office has been operating throughout this pandemic as we provide services to essential businesses and we've been deemed essential.  We take appropriate precautions.  There's no reason why it shouldn't be done.  That concludes my presentation.

        THE COURT:  Okay.  For opposing counsel, if you could also address the point that you would be in person with your client?

        MR. BEHAR:  Absolutely, your Honor.  With respect to the summary of the case, I'm not going to go point by point but we obviously dispute the characterization and I think that will probably suffice.

        THE COURT:  Yep.

        MR. BEHAR:  This deposition, up until last week, was going forward remotely.  The correspondence from Mr. Biesenbach, who by the way, other than the one conference that we handled where they increased their settlement offer and I felt like they were not in compliance with the Court's order and we had a telephone conference, he's handled everything.  So this issue with Mr. Zabel's hearing or sight -- he hasn't really been involved in this case.  Mr. Biesenbach

1  defended his client's deposition so I think that's an
2  important point to note.
3          Up until, like I said, a week ago, we were
4  doing this deposition remotely.  On numerous occasions,
5  I had told Mr. Biesenbach that my client intended to be
6  -- to participate in the deposition in my office and no
7  objection to that had been raised.  We hadn't discussed
8  it but I'm not going to be in the same room as my
9  client.  We will be in separate rooms because we're
10 still social distancing.  It's just that my client is
11 not technologically savvy and it will be easier to deal
12 with any kind of IT issues with respect to the
13 deposition if he's in a conference room by himself in
14 my office and I'm participating from my office.  So
15 that ameliorates the concern which was just raised for
16 the first time on this call by Mr. Zabel.
17         My client is 67 years old.  He's still
18 social distancing.  His job, when he does attend it, is
19 outside so he has not been inside with other people.  I
20 have medical conditions, both respiratory and
21 autoimmune.  I've been doing the same thing.  And
22 neither of us, given the situation, feel comfortable
23 putting our health at risk to take an in-person
24 deposition.
25         I'm a director of the Suffolk County Bar

1  Association.  I'm on the litigation and court
2  conferencing task force that we've created to kind of
3  explore how litigation is going to move forward in the
4  future with many of the state court judges out here.
5  Remote depositions, especially in the pandemic
6  situation that we've been dealing with for a few
7  months, have proliferated.  The technology works well.
8  Even with multiple documents, it can be handled very
9  easily, and it's just I think completely inappropriate
10 to ask my client and myself to put our health at risk
11 because they want to take an in-person deposition.
12           This is the last of this case that needs to
13 be done.  We're not asking that it be adjourned.  In
14 fact, the only two adjournments that have been asked
15 for in this case were both Covid-related, kind of in
16 the heart of the pandemic, one by myself, one by
17 plaintiff's counsel.  I think we should go forward with
18 this deposition and then get it done, and then I intend
19 to move for summary judgment.
20           THE COURT:  All right, look, the deposition
21 can happen remotely.  I think as a general matter, in
22 this pandemic, everybody is practicing law, for now and
23 indefinitely, I suspect going forward for quite a
24 while, needs to learn to do these efficiently and
25 effectively by video conferencing.  So particularly in

```
 1  this case, you know, New York and the surrounding area
 2  are in a -- rolling things out.  Other parts of the
 3  area are ahead of New York City but I think that the
 4  concerns about the pandemic here are very much alive
 5  and up to the moment, depending on the contact that you
 6  have with people from out of state or out of the area.
 7            So whether or not there were particular
 8  health concerns, that's the way I'm going in these
 9  cases.  But counsel and the witness have particularly
10  raised their own concerns which justify the remote
11  depositions.  So there are plenty of guides available
12  to tell you how to deal with this and have best
13  practices.
14            This is just an example:  If there's
15  actually a real concern that there might be some
16  communication between a witness and an attorney that
17  the person taking the deposition thinks I should know
18  about, you can use the same function that lets you all
19  be on the screen at the same time.  You can have
20  markers such as a piece of art or books or something
21  that's behind one person so you know when the person is
22  in the place where they say they were or not.
23            If counsel is saying you're in separate
24  rooms and maintaining the social distancing, except
25  that there's a technology problem, that's fine.  It
```

1  does mean you have to prepare more, at least with
2  regard to the documents.  It may be that the witness'
3  counsel, you already have a full set of the documents
4  so you're just talking about how they're marked.  If
5  it's a practical concern that this is going to be a
6  slower process, then you can agree that the deposition
7  could take longer than the seven hours and that you're
8  going to do it over two days or whatever the practical
9  accommodations are.
10            I imagine -- maybe I'm wrong but there are
11 some techniques that you could use for addressing the
12 physical challenges of doing things by Zoom or
13 whatever.  I don't know if you're going to use Zoom or
14 Skype or whatever function you're using and your court
15 reporter is using.  So we're going ahead via video
16 link.
17            MR. ZABEL:  Judge?
18            THE COURT:  Yes.  Who is that?
19            MR. ZABEL:  Can I have an order or even a
20 minute order directing that the deponent, with the
21 exception of for IT-related issues, be alone in a room
22 while he is deposed?
23            THE COURT:  No, I'm not ordering that.
24 Counsel said that was his intention and practice, and I
25 expect him as an officer of the Court to follow

1  through.  Who knows, maybe the client won't be able to
2  find the piece of paper or something that you need to
3  have some other limited interaction.  This is a
4  deposition.  It's a general rule about communication
5  and we're leaving it at that.
6           MR. ZABEL:  Judge, that's a valid concern
7  and if there's a way of addressing it with an order, I
8  don't see why that order would be inappropriate.
9           THE COURT:  Well, that's unfortunate because
10 I'm not issuing that order.
11          MR. ZABEL:  That is unfortunate.
12          THE COURT:  Oh, well, that's the way it's
13 going to be.  You're expected to follow the usual rules
14 for conducting a deposition without any coaching or any
15 other impermissible contact.  I expect you to both do
16 the deposition properly.  You said that you had it
17 scheduled.  You're supposed to, from our early June
18 order, wrap up discovery by the 17th of July.  Does that
19 fit with the schedule for doing this?
20          MR. BEHAR:  Yes, your Honor.
21          THE COURT:  Mr. Zabel?
22          MR. BEHAR:  This is the last of the
23 discovery.
24          MR. ZABEL:  It's expected that we'll comply
25 with that order.

```
 1              THE COURT:  Okay.  You have Judge Chen as
 2   your district judge so you need to put in a pre-motion
 3   conference letter for the proposed summary judgment
 4   motion.  That would by -- let's say the 17th of August
 5   for that, and then we will see where it goes.  Also, by
 6   the 17th of July, you should file a letter confirming
 7   that you're finished with discovery.
 8              Settlement?  Any possibility before you do
 9   these depositions?
10              MR. ZABEL:  No.
11              THE COURT:  Or go into motion practice?
12              MR. BEHAR:  I don't think so, your Honor,
13   unfortunately.
14              THE COURT:  Okay.  If you change your mind
15   and you want to have a settlement conference with me or
16   referral to court-annexed mediation, you can just
17   submit a letter on that front.  All right, that's it.
18   Thank you very much.
19              MR. ZABEL:  Be well, Judge.
20              MR. BEHAR:  Thank you very much, your Honor.
21              THE COURT:  Take care, bye.
22                       * * * * * *
23
24
25
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18       I certify that the foregoing is a correct
19   transcript from the electronic sound recording of the
20   proceedings in the above-entitled matter.
21
22
23   [signature]
24
25   ELIZABETH BARRON                         July 10, 2020
```