```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK



---------------------------X
                           :
JOSE P. CHICAS,            :
                           :    19-CV-2853 (PKC)(VMS)
             Plaintiff,    :
                           :    July 2, 2020
                           :
          V.               :    Brooklyn, New York
                           :
GARDEN DESIGN BY PLANT WORKS,:
INC., et al.,              :
             Defendant.    :
---------------------------X


    TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
        BEFORE THE HONORABLE VERA M. SCANLON
            UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        SAUL ZABEL, ESQ.




For the Defendant:        JARRETT BEHAR, ESQ.


Audio Operator:


Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377




Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1            THE COURT:  This is Chicas v. Garden Design

2    by Plant Works, Inc., 19-CV-2853.

3            Let's first get plaintiff's counsel's

4    appearance.

5            MR. ZABEL:  For the plaintiff, Saul Zabel

6    with the law firm of Zabel & Collotta.  Good morning,

7    Judge.

8            THE COURT:  Hello.

9            And for defendants?

10           MR. BEHAR:  Good morning, your Honor.  For

11   the defendants, Jarrett Behar, Certilman Balin Adler &

12   Hyman.

13           THE COURT:  We're making a recording but do

14   you have a court reporter there?  Do you want the

15   person to take this down?

16           MR. ZABEL:  That's up to you, Judge.  She's

17   going to be taking it down through one of our systems

18   through I guess the microphone that we have set up,

19   listening in on the speaker phone.

20           THE COURT:  This is the official record.  If

21   it would help you to have whatever the order is on the

22   record in your transcript, you could do that.  That's

23   up to you.

24           MR. ZABEL:  Okay.  Judge, if it's okay with

25   you, I'm just going to speak directly to Jarrett Behar

1   so we can figure out which one of us is best able to

2   have your Honor heard by the court reporter because

3   right now, I've muted my screen so as to avoid any

4   dirty sound.

5           THE COURT:  Right.  Can you text her and

6   tell her to call in to this number?

7           MR. ZABEL:  I think I can.  I have a chat.

8   Okay, I'm going to type into the chat.  Judge, if you

9   can hold on just one second.  I'm just trying to have a

10  conversation.

11          MR. BEHAR:  Sorry, Judge, I was just giving

12  the court reporter your name.

13          THE COURT:  Okay.  Is she going to call in?

14          The other issue while you're getting the

15  court reporter is, if the witness is in the room, the

16  witness should leave the room.

17          MR. ZABEL:  Okay.

18          THE COURT:  Whatever that means in terms of

19  how somebody is connected.

20          MR. ZABEL:  All right, he's leaving.

21          THE COURT:  All right.  Was that the court

22  reporter?  You just called in?

23          MR. ZABEL:  Judge, I'm sorry, she called in

24  and was hearing echos.

25          THE COURT:  Hi, is this the court reporter?

```
1              COURT REPORTER:  This is the court reporter.
2   How are you?
3              THE COURT:  Good.  This is Judge Scanlon.
4              COURT REPORTER:  Hi, Judge Scanlon.
5              THE COURT:  You're already doing this but --
6   what we have on the record here is Chicas v. Garden
7   Design by Plant Works, Inc., 19-CV-2853.
8              COURT REPORTER:  Are you on the record right
9   now, Judge?  Should I get you on the record saying this
10  or no?
11             THE COURT:  Yes.
12             COURT REPORTER:  Okay, can you start again?
13  I'm sorry.
14             THE COURT:  Sure.  We had the preliminaries
15  before you got on, which is to call the case.  As you
16  know, this is Chicas v. Garden Design by Plant Works,
17  Inc., 19-CV-2853.  We have Mr. Zabel and Mr. Behar on
18  the line.  We also have -- I'm Judge Scanlon and we
19  have my law clerk on the line as well.  This is being
20  recording within the Court's recording system but I
21  asked that you join to the extent that there's an order
22  from this, it should be in the transcript of the
23  deposition for the reference of the parties.  It takes
24  a couple of days to get copies of the transcript for
25  the recordings from our own system, so I figured it's
```

1  good to have you on the line as well.

2       So we had a conference last week about this

3  case and you were moving ahead with depositions, and I

4  understand from the brief conversation with my law

5  clerk that you have some deposition disputes.  So

6  first, which deposition is this?

7       MR. BEHAR:  It's the defendant, your Honor.

8       COURT REPORTER:  Wait, who is speaking?

9       MR. BEHAR:  That was Jarrett Behar.

10      THE COURT:  This is Mr. DiClementi's

11  deposition, is that right?

12      MR. BEHAR:  Correct, your Honor.

13      THE COURT:  Okay.  I heard there were

14  disputes from both sides so --

15      MR. ZABEL:  If I may, Judge, this is Saul

16  Zabel speaking.

17      THE COURT:  Yes.

18      MR. ZABEL:  Okay.  So I was the one who had

19  called.  There are a couple of issues.  Almost

20  immediately, when I was questioning Mr. DiClementi on

21  what documents he used in preparation for this

22  deposition, Mr. Behar instructed him not to answer,

23  somehow believing that documents that -- the identity

24  of documents Mr. DiClementi reviewed in preparation for

25  this deposition were privileged or the identity of

1  those documents were privileged.  I decided to continue

2  going on because I had a strong and nagging suspicion

3  that we would get on the phone at some point.  That's

4  the first issue.

5          The second reason I called is because Mr.

6  Behar threatened to cancel the deposition because I was

7  questioning his client on what I perceive to be an

8  inconsistency in his testimony, one that just before

9  your Honor called in, was compounded even further by

10  even more inconsistencies on it.  But Mr. Behar is

11  upset and accusing me of embarrassing his client

12  because I'm asking him simple questions.  I'm asking

13  him to confirm his representations and his

14  verifications in the interrogatories.

15          MR. BEHAR:  That's actually not accurate,

16  your Honor.

17          THE COURT:  Wait, wait, wait, hold on.  Let

18  me hear the litany of Mr. Zabel's problems and your

19  response, and your problems and his response, and we'll

20  see where we're going.

21          MR. BEHAR:  I apologize.  I thought he was

22  finished, your Honor, I apologize.

23          MR. ZABEL:  My only issue, and it's minor

24  and I can certainly live with it -- I have before -- is

25  the speaking objections that Mr. Behar continues to

1   make.  He's making speaking objections but it's not

2   crossing the line to coaching.  They're just slowing

3   down the process.

4           THE COURT:  All right.  For the defendant's

5   counsel?

6           MR. BEHAR:  First of all, I'm not making

7   speaking objections, your Honor.  But more importantly,

8   what Mr. Zabel is doing is taking a paragraph-long

9   interrogatory that is in an exhibit in the record

10  before the witness.  He's paraphrasing it, asking it

11  one way, then asking it another way.  He still hasn't

12  actually asked the witness to look at the actual answer

13  and is then saying, well, what's your answer to this,

14  what's your answer to that?  Then at one point, he

15  said, are you going to stick to that?  It's harassing

16  the witness and I asked him to stop doing that, at

17  which point he lodged into a soliloquy about the

18  ineffective nature of my defense of my client on the

19  record, in front of my client.

20          I think what's happenign, and this is a

21  continuation of his attempt to try to force this

22  deposition to appear in person, is that he's trying to

23  badger my witness into getting flustered and to

24  answering questions that he either doesn't fully

25  understand or in an incomplete manner.  In fact, I can

1    see it happening and I don't want to coach my witness,

2    which is why I made a motion, an oral motion pursuant

3    to Federal Rule 30(d) to limit the deposition, and

4    that's what ended up on this call.

5            MR. ZABEL:  Judge, if I may, just to repeat

6    the question.

7            THE COURT:  No, no, no, no.  You had your

8    turn.

9            What about this privilege point?

10           MR. BEHAR:  Your Honor, I think that point

11   is irrelevant because later on in the deposition, he

12   said what he looked at.  So I think at this point,

13   that's not even a real issue.

14           MR. ZABEL:  I can agree to that.

15           THE COURT:  Okay.  Look, this is super

16   simple.  There are no speaking objections, except to

17   the extent you need to say that something is

18   privileged, and you can give your client clear

19   instructions.  You can have the court reporter read

20   back what I'm going to say, which is if your client

21   does not understand the question for whatever reason,

22   it's confusing, it's repetitive, it assumes facts not

23   in evidence, then your client should just say either, I

24   don't know the answer or I don't understand the

25   question.

1          Your client is an experienced business

2    person and does not need to get forced into answering

3    something either incorrectly or guessing, which is a

4    common thing that witnesses do.  Plaintiff's counsel,

5    he could be looking for cross-examination materials

6    down the line, he could be trying to set this up for

7    surviving a summary judgment motion.  Whatever the

8    effort is on the plaintiff's behalf, it doesn't need to

9    upset the witness.

10          I cannot tell, without having heard the

11   exchange, whether this is an effective way to do a

12   deposition.  It's how Mr. Zabel wants to spend his time

13   on the deposition and, you know, just move ahead

14   calmly.  There's no reason for anybody to get upset

15   about this circumstance here.  You all know the basic

16   rules (ui) repeating them.  You're getting a breather

17   right now, your client is getting a breather, and

18   that's it.

19          Obviously on the plaintiff's side, I don't

20   know whether your questions are clear or not but if

21   they're not, then they're not really useful to you.

22   Obviously, it would be helpful if the witness could

23   clearly understand what you're asking and get useful

24   testimony so that if there's motion practice, it can be

25   dealt with in a straightforward way and if there's a

1  trial and you're needing to have cross-examination, you

2  have clear material.

3          COURT REPORTER:  (Ui)?

4          THE COURT:  I said if there's cross-

5  examination, that there's useful material.

6          COURT REPORTER:  Thank you.

7          THE COURT:  It sounds like you're just

8  getting a very jumbled record.

9          MR. BEHAR:  That's exactly what's happening,

10  your Honor, and it would just be helpful, I think, if

11  instead of paraphrasing these documents, especially for

12  my client, who is not actually a sophisticated business

13  person -- he's really more of a laborer, who just

14  happens to own a very small landscaping business.  It

15  would be helpful to actually just show him the document

16  instead of just trying to --

17          THE COURT:  I don't think -- look, again,

18  plaintiff's counsel, you can approach this in the way

19  that you want as long as it doesn't cross the line into

20  harassment.  But just as an observation, all counsel --

21  and I'm experienced at doing this.  It doesn't help to

22  paraphrase because the response is going to be, when

23  you get to the motion practice or trial, that's not

24  what the document says.  So it's kind of a useless line

25  of examination to go that way.

1              MR. ZABEL:  Judge --

2              THE COURT:  Working from the record

3    ultimately -- it may be a little bit more tedious in

4    that you have -- you have to do this via Zoom or

5    whatever system you're using, but -- sorry, you wanted

6    to say something.

7              MR. ZABEL:  Judge, you're laboring under a

8    misconception based upon Mr. Behar's presentation.

9              THE COURT:  Uh-huh.

10             MR. ZABEL:  Specifically, I asked the

11   witness -- now I'm paraphrasing again -- who was

12   responsible for creating, establishing or maintaining

13   compensation and record-keeping policies?  He so far

14   has identified that it was only him who was responsible

15   and then later recanted and said it was only his

16   accountant who was responsible.

17             THE COURT:  That's an impossible question

18   for a witness to answer.

19             MR. ZABEL:  It wasn't impossible in his

20   interrogatories, Judge.

21             THE COURT:  It's compounded five times.

22   That is not a question you should be asking in a

23   deposition.

24             MR. ZABEL:  (Ui) questions play out in trial

25   because they're very helpful at trial.

1          THE COURT:  Well, they're completely

2     confusing and I wouldn't let you use them, so you have

3     to break it down.  It doesn't make -- you have three --

4     I think you had three possibilities at the front end of

5     that question and you have other possibilities at the

6     back end.

7          MR. ZABEL:  And yet he answered them.

8          THE COURT:  You have multiple combinations.

9          MR. ZABEL:  And yet he answered them.

10          THE COURT:  It's totally confusing, it's

11     totally confusing, totally confusing.

12          MR. ZABEL:  Judge, this is not the first

13     time that a witness has been confused and has hurt

14     themselves at trial because of it.  That's my job is to

15     win for my client, especially when he has already

16     admitted to failing paying overtime.

17          THE COURT:  Mr. Zabel, this is not a

18     "gotcha" exercise.

19          MR. ZABEL:  Of course it is.  That's what a

20     deposition is, Judge.

21          THE COURT:  Well, I'm not letting you

22     conduct that kind of a deposition so you're going to --

23          MR. ZABEL:  Then I guess I'll have to do my

24     deposition in front of you, Judge.  I'm okay with that.

25     This way, you can see it and it won't be susceptible to

1   misrepresentations.

2          THE COURT:  You're not going to -- you're

3   not asking those kinds of questions and they're not

4   going to have to answer it, and you're going to waste

5   your opportunity.

6          MR. ZABEL:  I'm looking forward to

7   impressing you with my questions, Judge, and then I'll

8   gladly go over the trial transcript with you to show

9   you exactly why I ask the questions that I ask and what

10  it brings out in a jury to get the verdicts that I get.

11         THE COURT:  That's fine but you're not going

12  to ask those questions here and continue the

13  deposition.  So either you ask clear questions that are

14  not compound or that whole line of questioning is not

15  going to happen and you're not (ui).

16         MR. ZABEL:  Judge, under the Federal Rules,

17  even if I ask a compound question, Mr. Behar is limited

18  to just saying, I object to the form.

19         THE COURT:  Well, he's objecting here and

20  I'm telling you to stop asking compound questions.  And

21  you just told me you did it so stop.

22         MR. ZABEL:  I'm going to keep doing it,

23  Judge.  I have to do it.  It's necessary to get where

24  this case needs to be.

25         THE COURT:  Then I'm telling you now if I

1    get a motion for a protective order because you're

2    continually asking compound questions that the witness

3    cannot answer, then that is going to terminate this

4    line of questioning and you're not going to get anotehr

5    deposition on that, so your choice.

6              MR. ZABEL:  Okay, I think what you have when

7    you have a certain type of person who is taken

8    advantage of by an employer -- you have a low-wage-

9    earning person of color being taken advantage of, you

10   now are systemically saying it's okay by not letting me

11   question the person who is taking advantage of his

12   rights.  That's horrible, Judge.  That's not what we

13   stand for as a profession.

14             THE COURT:  All right, well I, you know --

15             MR. BEHAR:  I don't know what to say about

16   this, Judge.

17             THE COURT:  (Ui) the record has nothing to

18   do with what you just described and --

19             MR. ZABEL:  But it does.

20             THE COURT:  Mr. Zabel, I'm not arguing with

21   you.  I've given you the ruling.  You make the choice

22   how you want to do the deposition but if you do the

23   deposition in a way that continues with compound

24   questions, then that entire line of questioning is

25   going to be cut off.  And if it continues through the

1  rest of the deposition, then that's the end of the

2  deposition, and you're not getting another chance to

3  depose this witness, so that's that.

4          MR. ZABEL:  I think that's a violation of my

5  client's rights, Judge.

6          THE COURT:  Well, then take it up.

7          MR. ZABEL:  And an indictment on the

8  process.

9          THE COURT:  Wait, wait, wait.  On the

10 speaking objections, to the extent there are any, cut

11 it out.  No speaking objections, except to the extent

12 you need to make a statement with regard to privilege

13 issues, and so far, you've already resolved those

14 privilege issues.

15         MR. ZABEL:  There was one other speaking

16 objection but it was permitted when Mr. Behar

17 encouraged his client to assert his Fifth Amendment

18 rights.  I have no objection to that.

19         THE COURT:  All right, well, I just said

20 whatever -- if you need to make a privilege objection,

21 then the privilege objection should be stated clearly

22 on the record.  Then on the defendant's side, are there

23 issues with regard to the deposition other than what

24 we've already covered?

25         MR. BEHAR:  So, your Honor, just so I'm

1   clear because you instructed Mr. Zabel not to continue

2   with that manner of questioning and he specifically

3   said that he was going to continue with it.  So should

4   it actually continue --

5               THE COURT:  Then make the record.

6               MR. BEHAR:  -- would you like us to call

7   back again because --

8               THE COURT:  I would prefer that you work it

9   out but if it continues, then feel free to make another

10  motion.

11              MR. BEHAR:  Okay.

12              THE COURT:  This one I think is Mr. Zabel's,

13  that would be yours.  Are there other issues on the

14  defendant's side?

15              MR. BEHAR:  I think that's the main issue,

16  your Honor.

17              THE COURT:  And on the plaintiff's side,

18  other issues other than --

19              MR. ZABEL:  Other than please note my

20  objection to any systemic process designed to continue

21  to devalue my client in the eyes of the law.

22              THE COURT:  Well, since that's not the case,

23  I guess it's an objection that's not going to carry the

24  day.  I think we're finished with this.  If you need to

25  call back, you can do that.  Hopefully, you can work it

1   out and just move ahead and get this done.

2            MR. BEHAR:  I hope so, too, your Honor.

3            THE COURT:  All right, thank you.

4            MR. BEHAR:  Thank you, your Honor.

5            (Second call.)

6            THE COURT:  This case is Chicos v. Garden

7   Design by Plant Works, Inc., 19-CV-2853.  We have Judge

8   Scanlon, that's me, we have my law clerk.

9            Do we have plaintiff's counsel, Mr. Zabel,

10  and defendant's counsel, Mr. Behar, on the line?

11           MR. ZABEL:  Yes.

12           MR. BEHAR:  Yes, your Honor.

13           THE COURT:  And then the court reporter?

14           COURT REPORTER:  Yes.

15           THE COURT:  If the witness is in the room

16  with you, Mr. Behar, (ui) on this but he should not be

17  on the phone call.

18           MR. BEHAR:  He's in a different room, not on

19  the call, your Honor.

20           THE COURT:  Okay.  All right, this is round

21  two of your difficulties in today's deposition.  So

22  whose motion is it?

23           MR. BEHAR:  I initiated the call, your

24  Honor.  Earlier in the deposition, my client had

25  testified that he had given discountes off of his

1    invoices to other clients.  Now we're looking at an

2    exhibit that is a compilation of six years of every

3    invoice that he issued printed from his Quickbooks

4    system.  Mr. Zabel asked him if that was -- if those

5    were changed to reflect the discounts.  He

6    unequivocally said that they were not, that those were

7    the -- those were the undiscounted amounts.  Then Mr.

8    Zabel said, well, didn't you testify earlier that you

9    gave discounts, and he very clearly again said yes, but

10   these are the undiscounted amounts, at which point

11   those two questions just kept getting asked over and

12   over and over again.  And after the third time, I asked

13   Mr. -- I asked him to stop.  He was asking the same

14   question over and over again.

15           Then I told my client, I siad, don't answer

16   that, we're going to get the Court on the phone, and

17   Mr. Zabel then started screaming the question at my

18   client at least three times.  I asked him to stop

19   screaming at my client and that did not happen, and

20   that then resulted in the call.  And I did ask the

21   court reporter to cue that question and answer up to

22   read back to you if your Honor wanted to hear it, but

23   it was getting abusive and I needed to stop it.

24           THE COURT:  Okay.  So let me hear from Mr.

25   Zabel and then I would like to hear the set of

1   questions that's the subject of this dispute.

2           MR. ZABEL:  Why don't we haer the questions

3   first and then I'll speak.

4           THE COURT:  Why don't you do what I said,

5   which is if you'd like to make an argument, make your

6   argument.

7           MR. ZABEL:  Well, you didn't say that.  Had

8   you said that, Judge, I would have, and my argument is

9   this:  Mr. Behar, since before this deposition has

10  started, has been claiming that the whole purpose of

11  this deposition is to abuse his client.  Nothing could

12  be any further.  The whole purpose of this deposition

13  is to try and find out why his client thinks it's okay

14  to steal from his Latino workers, all things he's

15  testified that he's doing.

16          So when he -- the reason why the invoice

17  amounts and the discounted invoice amounts are relevant

18  in this case is because Mr. Behar seems to think that

19  he can deny commerce without having substantial

20  questions asked about it.  Now, although Mr. DiClementi

21  has testified that a fair amount of his business is

22  done in cash and those cash payments are not reported -

23  - I'm sorry, he didn't say that those cash payments are

24  not reported for tax purposes, he pled the Fifth

25  Amendment when asked questions about that, but he has

1  said that the cash payments don't hit his books and go

2  directly into a safe in his possession.

3        So I asked him about his representations

4  about gross sales and his understanding of what gross

5  sales are.  His representation as to what gross sales

6  are seems to indicate what he believes gross payments

7  received are.  There's a divergence between the amount

8  listed on the six-year compilation of the invoice list

9  versus the amount that's listed on the tax returns for

10  gross receipts.  So when I asked him about the

11  discounts which he testified he received before, he

12  said that there is nowhere on this document that

13  indicates that these invoices do not reflect discounts

14  but he just knows.

15        So I continued to question him:  How do you

16  just know?  And his response is, I just know.  And as

17  you know, Judge, as a lawyer, you can't accept "I just

18  know," especially when you're angling to take a case to

19  trial, as we are here.  Why?  Because that is where my

20  client will find justice and not anywhere else.  So I

21  asked him, where does it show?  He said, there is none.

22  And I tried to get to him where or when he discounted

23  the invoices and where is that discount reflected,

24  because if it's not reflected in any of these invoices,

25  then he has withheld documents during the discovery

1  process that I would be entitled to.

2          So did I ask him three times in a row?  Yes.

3  The reason why I asked him three times in a row is

4  because Mr. Behar seems to think it's okay under the

5  Federal Rules to advise his client not to answer simply

6  because Mr. Behar realizes that his client is about to

7  put his foot in his mouth, which is exactly why the

8  Federal Rules were designed to prevent attorneys from

9  advising their clients not to answer.  They can't help.

10  Mr. DiClementi is on his own in this deposition.  Mr.

11  Behar seems to think that a deposition is a team

12  process.  It's not.

13          THE COURT:  Okay, so let me ask, is this --

14  what's the testimony that you're using to conduct the

15  deposition?  What service?

16          MR. BEHAR:  Zoom, your Honor.

17          THE COURT:  So it's a video?

18          MR. BEHAR:  There is a video stream,

19  correct, your Honor.

20          THE COURT:  So who is seeing who?  Who is on

21  the screen when you're conducting the deposition?

22          MR. BEHAR:  Everyone, your Honor.

23          THE COURT:  Okay.  And the court reporter or

24  she's calling in or --

25          MR. BEHAR:  She's also on video, your Honor.

1          THE COURT:  Okay, all right.  For the court

2    reporter, do you know which series of questions the

3    lawyers are disputing?

4          COURT REPORTER:  Yes, I'll go back.

5          THE COURT:  Thank you.  If you don't mind,

6    if you could read that, that would be helpful.

7          COURT REPORTER:  Tehre's a lot of colloquy,

8    thouygh.  I'll start with the questions.

9          "When did you discount the invoices?

10          Mr. Behar:  Joe, don't answer that."

11          MR. BEHAR:  No, before that, before that.

12          COURT REPORTER:  Before that?

13          MR. BEHAR:  Yeah.

14          COURT REPORTER:  Okay.

15          MR. BEHAR:  That was after he'd asked that a

16    few times.

17          COURT REPORTER:  Okay, I'll go through.

18          THE COURT:  You can read from the start of

19    the series of questions about the discounts on the

20    invoices.

21          COURT REPORTER:  "Question:  So you don't

22    know if what is listed here is the discounted or the

23    non-discounted invoice, correct?

24          "Mr. Behar:  Objection.

25          "Answer:  All of this invoicing that you see

1    in front of you is non-discounted.

2              "Question:  How do you know that?

3              "Answer:  I just know that.

4              "Question:  I'm sorry, I asked you how you

5    know that?

6              "Mr. Behar:  Objection.

7              "Answer:  I never altered it.  Prices are

8    what they are and that's what's here.

9              "Question:  How do you know those prices

10   don't reflect the discounted prices that you gave

11   before?

12             "Mr. Behar:  Objection.

13             "Answer:  I know.

14             "Question:  How do you know?

15             "Mr. Behar:  Objection.

16             "Answer:  I know, period, done.

17             "Question:  It does not work like that, Mr.

18   DiClementi.  Are you testifying that you remember or is

19   it you just have a feeling?

20             "Answer:  I never altered.

21             "Mr. Behar:  Objection.

22             "Answer:  I never altered the actual

23   invoices, period.

24             "Question:  When you testified earlier that

25   you would discount invoices, that was not true?

1          "Mr. Behar:  Objection.

2          "Answer:  It is true.

3          "Question:  So you did alter invoices?

4          "Mr. Behar:  Objection, asked and answered.

5     He has answered this question three times.  You are

6     being argumentative now."

7          Then Mr. Zabel said, "Mr. Behar, remain

8     silent.

9          "Mr. Behar:  I am not going to remain

10    silent.  You are badgering him now.

11         "Question:  If you testified that you

12    discount the invoices" --

13         Then Mr. Behar interrupted:  "Joe, don't

14    answer.  You can call the Court if you want.  You have

15    asked the same question now three times.

16         "Question:  Mr. DiClementi, where did you

17    discount the invoices?

18         "Mr. Behar:  Please do not raise your voice.

19         "Question:  Where did you discount the

20    invoices?

21         "Mr. Behar:  Joe, don't answer.  When you

22    stop raising your voice, then he will answer questions.

23

24         "Question:  Mr. DiClementi, where did you

25    discount the invoices?

1               "Mr. Behar:  I would like to note again for

2    the record that this is now the third time that you

3    have screamed the question at Mr. DiClementi.

4               "Question:  Where did you discount the

5    invoices?  I will keep asking him.

6               "Mr. Behar:  Joe, don't respond.

7               "Question:  Where did you discount the

8    invoices.

9               "Mr. Behar:  I'm directing him not to

10   answer.  The witness is not going to answer while you

11   are screaming at him.

12              "Question:  Where did you discount the

13   invoices?  Where did you do it?

14              "Mr. Behar:  Joe, mute yourself.

15              "Question:  Where did you do it, Mr.

16   DiClementi?

17              "Mr. Behar:  Joe, just mute yourself.

18              "Question:  Where did you do it?

19              "Mr. Behar:  We are stopping.  If you want

20   to call the Court, call the Court.

21              "Question:  I'm not stopping.  I'm not

22   prepared to stop.  Mr. DiClementi, where did you

23   discount the invoices?

24              "Mr. Behar:  We are going to pause now.  I'm

25   going to call the Court."

1          That was pretty much the bulk of it.  Then

2   they just started talking about calling the Court.

3          THE COURT:  Right.  All right.  So let me

4   ask a question not about that text directly.  Is there

5   -- is it possible, since you're on Zoom, to record the

6   rest of this deposition with a video?

7          MR. ZABEL:  Not without extra fees and

8   expenses.

9          COURT REPORTER:  That was Mr. Zabel talking

10  just now, right?

11         THE COURT:  Yes, yes.

12         MR. ZABEL:  Sorry, I should have identified

13  myself.

14         THE COURT:  And what are those fees and

15  expenses.

16         MR. ZABEL:  I don't know.  I haven't looked

17  into it but I know that's an additional cost, an

18  additional cost beyond the cost that we've already had

19  to incur because having a Zoom deposition is more

20  expensive than having an in-person deposition.

21         THE COURT:  Is it possible to have the video

22  recording aspect of the Zoom service turned on so that

23  the rest of this deposition is recorded by video?

24         MR. ZABEL:  Madam Reporter?

25         COURT REPORTER:  I don't know that.  I can

1    make a phone call.  I don't really know the answer to

2    that.  So you want to record the rest of the

3    deposition.

4              THE COURT:  Yes.

5              COURT REPORTER:  Through the Zoom, I'm not

6    too sure.  Do you want me to put you on mute and I can

7    call the agency?

8              THE COURT:  Yes.  You're called in to this.

9    Can you get that information for us?

10             COURT REPORTER:  Yes.  Give me two seconds,

11   yes.

12             THE COURT:  All right, so we're just going

13   to hold until you get back.

14             COURT REPORTER:  Okay.

15             THE COURT:  Thanks.

16             (Pause in proceedings.)

17             COURT REPORTER:  I'm still trying to get in

18   touch with someone.  Hold on.

19             THE COURT:  That's fine.  This would be

20   helpful.

21             COURT REPORTER:  Sorry.

22             THE COURT:  No problem.

23             (Pause in proceedings.)

24             COURT REPORTER:  I called one girl.  She

25   said she's almost 90% sure that there's a setting.

1  Right now, I hit it and it said, record to the cloud.

2  It says "recording" right now.  I mean, I don't -- it

3  says "recording."  I'm just not sure how to play that

4  back and send it to you, Judge.  They said they were

5  going to put another call to the tech department to get

6  back to me.

7           THE COURT:  All right.  Did she have any

8  idea what the fee would be?

9           COURT REPORTER:  No, I didn't even ask her

10  about the fee.  Right now, it says it's recording.  It

11  says, "record to iCloud."  Do you want me to just wait

12  a few minutes just to double-check?  Just -- recording.

13           MR. ZABEL:  I have no problem proceeding

14  with the recording just so long as Mr. Behar pays for

15  the recording.

16           MR. BEHAR:  I'm not agreeing to pay for the

17  recording.

18           THE COURT:  That's not the story right now.

19  Do you know if there's the option -- my law clerk is

20  telling me there's a local recording option so not to

21  the cloud but to the computer that you're -- whoever's

22  computer is the one controlling.

23           COURT REPORTER:  Yeah, I'm the host so on my

24  iPad, it says "record to the cloud."  It's actually

25  recording right now.

1          MR. BEHAR:  Yeah.  On iPads and iPhones, it

2  only records to the cloud.  You need to be hooked up on

3  a computer to record locally.  But when you then log

4  into your account after the fact, you can then access

5  the cloud recording.  I've done that before.

6          THE COURT:  Okay.  Are the participants,

7  either counsel, are you on -- can you do the recording?

8          MR. BEHAR:  You can only record --

9          THE COURT:  From the host?

10          MR. BEHAR:  -- if you're also a host, yeah.

11  I think there are problems with making one of the

12  attorneys a host in terms of, you know, the issues

13  related to taking depositions because then you have

14  tools available to you in terms of communicating.

15          MR. ZABEL:  I'm actually -- Judge, I'm

16  playing with this as we're talking.  I hit the record

17  button at the bottom of the screen and it says, "please

18  request recording permission from the meeting host."

19          THE COURT:  Right.

20          MR. ZABEL:  I may be able to do that if --

21          THE COURT:  Yeah.

22          MR. ZABEL:  -- the meeting host permits the

23  recording.

24          MR. BEHAR:  Only if they're made a co-host.

25          THE COURT:  Right, okay.  Sorry, so that's

1  my understanding, that you can -- the host can grant

2  co-host.  And do we have any idea then -- if the

3  recording is on a computer other than the court

4  reporter service, is there a fee for that?

5          MR. ZABEL:  I don't know.

6          COURT REPORTER:  I have no -- hold on, let

7  me see.  She's texting me back now.  Hold on.

8          THE COURT:  Okay.  Can you ask her?  And I

9  guess, also, can you have two co-hosts so that there

10  would be --

11          MR. BEHAR:  You can have multiple co-hosts.

12  I just did that for a family event I had over the

13  weekend.

14          THE COURT:  Okay.

15          COURT REPORTER:  They said you could them or

16  call me now, so I'm waiting.  You want to know the fee?

17  What do you want -- you want to know the fee?

18          THE COURT:  I want to know if counsel -- two

19  things:  One, if it's recorded to the cloud and that's

20  the court reporter service, what's the fee?  And is

21  there -- we think they can but counsel could both be

22  given co-host privileges and record the video, and is

23  there a fee for that?

24          COURT REPORTER:  Okay.

25          THE COURT:  All right, so we'll just hold

```
 1    until you're back.
 2              COURT REPORTER:  She didn't call.  She
 3    texted me that they're going to call me now.  I didn't
 4    get any call yet.
 5              THE COURT:  Okay.
 6              COURT REPORTER:  Sorry.
 7              THE COURT:  I'd like to know the answer
 8    before --
 9              COURT REPORTER:  Okay.
10              THE COURT:  The way this is going.  If you
11    can get it in the next couple of minutes, okay?
12              COURT REPORTER:  Okay.  Here they are.  Hold
13    on one second.
14              (Pause in proceedings.)
15              THE COURT:  Who do we have now?
16              MR. BEHAR:  It's still Jarrett Behar, your
17    Honor.
18              MR. ZABEL:  Saul Zabel.
19              THE COURT:  We still lost the court
20    reporter?
21              COURT REPORTER:  Hi, okay, I'm back.
22              THE COURT:  Hi.
23              COURT REPORTER:  It's the court reporter.
24              THE COURT:  Yes.
25              COURT REPORTER:  Can you guys hear me?
```

```
 1              THE COURT:  Yes.

 2              COURT REPORTER:  I don't know why it hung up

 3    on the other line.

 4              Mr. Behar, can you just mute your line?

 5              MR. BEHAR:  Sorry, yes.

 6              COURT REPORTER:  That's okay.  I have the

 7    agency -- I think I lost them, too.  No, they're still

 8    on hold.  So the answer to the first question, if I

 9    record to the cloud, what's the fee?  They don't know

10    the fee because they have to get in touch with their

11    billing department so that might take a little bit.

12              THE COURT:  Okay.

13              COURT REPORTER:  And you guys would have to

14    agree on the record to that, which I'm sure that's

15    fine.  Then the answer to the second question, they

16    want to know why counsel wants to be awarded the co-

17    host privileges?  They want to know why?

18              MR. ZABEL:  So we can record.

19              THE COURT:  This is the second -- this is

20    the second time they've called about alleged poor

21    conduct.

22              COURT REPORTER:  Okay.

23              THE COURT:  And I think the easiest way to

24    have a record of that so that I can see it in its

25    entirety is to be able to view the recording.  So it's
```

1 not going to be the record for the deposition because

2 the whole thing wasn't done that way, but it would be

3 to see what is going on with the conduct.  You are all

4 seeing the screen but I'm not.

5            COURT REPORTER:  Okay, but -- I didn't mean

6 to interrupt you, Judge, sorry, but they want to know,

7 like, if I can record it, then why does counsel want to

8 record it?

9            MR. BEHAR:  We do want to record it?

10            COURT REPORTER:  I know but why does counsel

11 want privileges if I'm the host?

12            THE COURT:  Because there's no answer as to

13 the cost here and that's the issue.

14            COURT REPORTER:  And even for the co-host

15 privileges, they don't know the fee.  They have to get

16 in touch with the billing department.  So pretty much

17 the answer to both questions is they don't know the fee

18 yet.

19            THE COURT:  Okay, all right.  So the

20 resolution of this is that I think that that line of

21 questioning went on far too long.  It's inappropriate

22 to repeatedly answer the question.  Under the

23 circumstances, it was appropriate for defendant's

24 counsel to say that the client -- the witness did not

25 have to answer the question.  He doesn't have to answer

1  the question.  It needs to move on and if there is

2  another issue in which -- this is the second time, in

3  my opinion, that plaintiff's counsel's conduct is not

4  appropriate in this deposition.  We tried -- we spent

5  20 minutse or so trying to get an answer to how to do

6  this recording in a way that will --

7        MR. ZABEL:  Judge, I'd like to appeal your

8  decision to the district court, Judge, immediately.

9        THE COURT:  You can hold off until I finish

10  making the decision and then you can do whatever you

11  want on the appellate front.  But no more questions on

12  this issue about whether --

13        COURT REPORTER:  Judge, I'm sorry, I'm not

14  even on the record with this.  Were you on the record

15  with this whole thing you were just saying?

16        THE COURT:  Yes.

17        COURT REPORTER:  I know.

18        THE COURT:  We're still recording on our end

19  so there is a court record of this.  We've spent enough

20  time trying to get an answer to the question about --

21        COURT REPORTER:  Wait, wait, wait, Judge,

22  can I let the court reporting -- they keep calling me

23  back.  Do you need the agency on the phone or no?

24        THE COURT:  If they can give you -- yes, why

25  don't you see if you can get an answer to the question

1    about the costs of you doing the recording.  The reason

2    I want the co-host privileges is because we keep having

3    these interruptions.  I would prefer if there was a

4    readily accessible video.

5              COURT REPORTER:  Okay.  Okay, give me one

6    second.

7              THE COURT:  All right.

8              COURT REPORTER:  Don't hang up.

9              (Pause in proceedings.)

10             COURT REPORTER:  Okay, the answer to the --

11   they don't give co-host privileges because it's

12   unethical.  That's what their answer was.  And they

13   will get me the price in like 20 minutes they said, for

14   me to record it to the cloud.

15             THE COURT:  Okay.  If they give you that

16   information along the way, that would be helpful.

17   We've been recording the whole time but if you can

18   record this for the purposes of the --

19             COURT REPORTER:  Okay, so I'm going to go

20   back on the record now.

21             THE COURT:  (Ui) include it.  All right.

22   Okay, you're ready?

23             MR. BEHAR:  Monique, are you ready?

24             THE COURT:  Did we lose her?

25             MR. BEHAR:  Hold on, let me tell her on the

1    thing that --

2               COURT REPORTER:  Okay.

3               MR. BEHAR:  Okay, there we go.

4               COURT REPORTER:  Now I'm back.

5               MR. BEHAR:  Okay.

6               COURT REPORTER:  There's no fee for me to

7    record it but there obviously is a fee if you want to

8    order the recording, which makes sense.

9               THE COURT:  All right, this is what we're

10    going to do.  Now we're on the record for the

11    transcript.  This court conference has been recorded

12    the whole time.  There were obviously some periods of

13    time in which there is no particular conversation

14    because the court reporter was kindly trying to get the

15    information about the expenses and technical

16    possibilities with regard to recording.  So the Court

17    transcript is the official transcript.  Right now, the

18    court recording is not available because there's some

19    difficulty with the AT&T system, so we're working with

20    what we have.

21               This is the decision:  There are no more

22    questions about the discounting of the invoices.

23    Plaintiff's counsel asked that question numerous times.

24    The defendant's witness answered the question.  That's

25    it.  It's not appropriate to continue to ask the

1   question over and over and over again, when the witness

2   has already provided an answer.  That's harassing

3   conduct and it's not going to continue here.

4           MR. ZABEL:  May I be heard, Judge?

5           THE COURT:  No, not on that issue.  You said

6   earlier you want to make an appeal.  Do whatever you

7   want on that front, that's fine.

8           MR. ZABEL:  Judge, I'd like to be heard on

9   that issue because --

10          THE COURT:  Counsel --

11          MR. ZABEL:  -- your decision does not

12  reflect what the court reporter read back to you.

13  There was no answer to my question.  Yes, I asked that

14  question three times but I never got an answer, and I

15  defy the Court or my adversary to say what the answer

16  was.  If I missed it because of my hearing loss, then

17  please, tell me what the answer was.

18          THE COURT:  Counsel, we've already gone over

19  it.

20          MR. ZABEL:  No, we haven't, Judge.  The

21  court reporter read to you verbatim the record and

22  there was no answer to the question.  I can't help but

23  consider what's going on is the systemic denial of my

24  client, a person of color, of his rights here.  This is

25  offensive to the process.  I simply asked the question

1   of where do the records reflect the discount?  And when

2   he says, according to his gut, they just don't, I asked

3   him where that discount is reflected.  He has not

4   answered that question.  There can't possibly be a

5   reason why that is an inappropriate question simply

6   because my adversary, in some desperate act of judicial

7   sanctuary, says enough, I'm not going to have my client

8   further hurt himself through his testimony, and run to

9   you.  It's inappropriate on every level.

10          THE COURT:  Are you finished speaking?

11          MR. ZABEL:  It depends.

12          THE COURT:  I do not want to hear any more

13   argument and your -- you may have your opinion and if

14   you'd like to raise it to the district judge, that's

15   fine.  But I listened to the transcript as read by the

16   court reporter.  You asked the question, the witness

17   gave the answer.  You asked the question again, the

18   witness gave the answer.  That's it.  Do not continue

19   to ask the same question.  It's not allowed in this

20   deposition.

21          And I do want the court reporter to record

22   the video for this deposition. If there ends up being

23   more issues where we need to look at the deposition

24   video to decide whose conduct is appropriate or

25   correct, then we'll do that and I'll decide who's going

1   to pay for it.  So far, this is the second time that

2   it's largely the plaintiff's conduct -- plaintiff's

3   counsel's conduct that is problematic.  There are

4   allegations being made here about this being a racist

5   decision and it does not reflect my understanding of

6   the record or what the decision is, but you can raise

7   it with the district judge if you would like.  But

8   making those kind of statements and an ad hominem

9   attack on this judiciary is not an appropriate course

10  of conduct by counsel.

11              So you're going to continue this deposition

12  and aim to finish it so that this is done and it will

13  be recorded on video.  If you need to have this issue

14  -- if there are more issues brought up, then we'll see

15  what to do about the video.

16              MR. ZABEL:  Judge, may I request a minute

17  order on this issue so I can test this decision?

18              THE COURT:  Yes, we'll enter it in a couple

19  minutes.

20              MR. ZABEL:  Thank you.

21              COURT REPORTER:  You said you will enter it?

22  You said enter it, Judge?

23              THE COURT:  I will enter an order in a

24  couple minutes, yes.

25              COURT REPORTER:  Okay, thank you.

1          THE COURT:  All right, thank you.  Have a

2   good 4th of July holiday.  Take care.

3          MR. BEHAR:  You, too, your Honor.  Thank

4   you.

5                    *  *  *  *  *  *  *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18         I certify that the foregoing is a correct

19    transcript from the electronic sound recording of the

20    proceedings in the above-entitled matter.

21

22

23

24

25    ELIZABETH BARRON                    July 10, 2020